IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| TED W. SHAFFER and KATHERINE A. SHAFFER,<br><br>Debtor. | Chapter 7<br>Case No. 07-6303<br>(Not for Publication- Electronic Docketing ONLY)<br>MEMORANDUM DECISION |

## I. INTRODUCTION

On August 21, 2008[1] and September 10, 2008,[2] the Debtors sent separate letters to the Court objecting to the attorneys' fees and costs awarded to their counsel and requesting that a portion of those fees be returned to the Debtors based upon their desperate financial situation. The Court issued an Order dated September 16, 2008[3] outlining what it believed were the issues to be determined and set a hearing for September 29, 2008. Counsel for the Debtors filed a response on September 24, 2008[4] and the Chapter 13 Trustee filed a response on September 18,

---

**1.** See Docket Entry No. 54.

**2.** See Docket Entry No. 55.

**3.** See Docket Entry. No. 56.

**4.** See Docket Entry No. 59.

1

2008.[5] The Court conducted a hearing on September 29, 2008, at which evidence was presented. Thereafter, the Court took the matter under advisement. The Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

The Debtors filed their Chapter 13 petition on November 26, 2007. Pursuant to their Chapter 13 plan, filed on December 12, 2007,[6] the Debtors were required to pay $1,135.00 per month, for a period of 60 months, commencing on December 26, 2007. The Debtors agreed to provide adequate protection, under their Plan, to two secured creditors: $298.17 per month to Citifinancial, and $45.72 per month to Toyota Motor Credit. The Debtors commenced making payments, but ultimately were unable to make the payments as required under the Plan. At the time of the dismissal of the case, the Debtors made 5 out of the 7 payments required under their Plan. Their case was dismissed on July 17, 2008.[7] Counsel for the Debtors included a fee application in the Plan, which was noticed out to all creditors and interested parties, including the Debtors. The Application outlined the services rendered by counsel and requested that the firm receive the sum of $2,300, in addition to the sum of $1,200 which the Debtors had paid to the firm prior to the filing of the bankruptcy petition.[8] The inclusion of the Fee Application as a part of the Chapter 13 Plan was consistent with the local practice in the Arizona Bankruptcy Court.[9]

---

**5.** See Docket Entry No. 57.

**6.** See Docket Entry No. 12.

**7.** See Docket Entry No. 50.

**8.** See Docket Entry No. 12.

**9.** See Local Rule 2083-11.

2

The Chapter 13 Trustee filed a report with the Court, stating that he held $5,675.00 in funds that should be distributed as follows:

1. Citifinancial: $2,087.19 for adequate protection payments for the Debtors' use of one vehicle;

2. Toyota Motor Credit: $320.04 for adequate protection payments for the Debtors' use of the other vehicle;

3. Counsel for the Debtors: $2,300 for the balance of the fees owing;

4. Trustee administrative percentage: $494.12; and

5. ADOR Levy: $473.65.

The Trustee stated that after the case was dismissed, on August 1, 2008, he received a Notice of Levy on Property/Rights to Property from the Arizona Department of Revenue ("ADOR") in the amount of $826.50. Because the Trustee was still in possession of the Debtors' interim Plan payments at the time of the levy, the Trustee concluded that he was required to turn the funds over to the ADOR from the refund that he would normally return to the Debtors.[10]

The Debtors stated that they had filed their bankruptcy petition to save their home and their vehicles. They met with counsel prior to filing their petition and outlined what they hoped to accomplish. They testified that because Ms. Shaffer required surgery, within the near future, they wanted to wait to file the bankruptcy petition until she had had the surgery, and then include her medical costs as unsecured claims on the schedules of creditors. They hoped to have these medical costs discharged after they completed their payments under their Chapter 13 Plan. Ms. Shaffer subsequently had the surgery, and the bankruptcy petition was filed. Counsel for the Debtors did not include any of the medical costs on the schedule of creditors that was filed with the Court. Although Ms. Shaffer apparently recovered from her surgery, the family continued to

---

**10.** The Trustee relied on A.R.S. § 42-1202(A)(West 2008), and the decision of In re Doherty, 229 B.R. 461 (Bankr. E.D. Wash. 1999). The Debtors do not challenge the turnover of funds to the ADOR.

3

have medical issues. Ultimately, Ms. Shaffer lost her job because of her son's illness. As a result, because of their son's illness, the mounting medical costs, and Ms. Shaffer's loss of employment, the Debtors decided that they were unable to continue in a Chapter 13 proceeding. They requested that their case be dismissed.

The Debtors testified that they felt their counsel had not appropriately represented them and that they should have all, or a portion, of the attorneys' fees and costs paid by them disgorged. They stated that they had lost everything; that the bankruptcy filing had placed them in a worse financial situation than they had been in before the filing. Counsel had failed to include the medical costs on the schedule of creditors, so they had the lost the benefit of filing the petition. They stated that a lawyer at the firm was impossible to reach. They repeatedly found themselves discussing their concerns or legal issues with support staff. They noted that counsel was supposed to meet with them prior to the Section 341 Meeting of creditors to discuss what was to transpire, but counsel failed to meet them as promised. They also testified that they never received any information from the firm about the motion for relief from stay filed by the secured creditor as to their residence. The Debtors stated that they only received the order vacating the stay. Eventually the Debtors were evicted from their residence.

One of the attorneys at the firm did bring the file with him and testified as to what the file reflected.[11] He noted that the file reflected that the Debtors were unwilling to continue with their case and requested that it be dismissed. He testified that the schedules did not include any of the medical expenses incurred by Ms. Shaffer, but he was unable to explain why there had been such an omission. He stated that the firm's file did not contain any of the medical bills. He testified that the file did reflect a conversation with one of the Debtors around February 4, 2008; that a voice mail message was left with the Debtors, in April 2008, as to how to respond to the Trustee's concerns as to confirmation of the Plan; that the firm had filed a Motion to Extend on

---

**11.** The attorney who had met with the Debtors did not attend the hearing. Hence, the attorney who did appear from the firm was only able to rely on the file for purposes of the hearing.

4

April 22, 2008, concerning the filing of a Stipulated Order of Confirmation because the file reflected the Debtors had not responded; that the firm had contacted the Debtors again around May 6 because a Motion for Relief from Stay had been filed by the creditor with a lien on the Debtors' home; and that the firm had requested that the Debtors call the office as soon as possible around July 17, 2008, to discuss conversion of the case to Chapter 7, rather than dismissal. The attorney noted that the file seemed to reflect no timely responses from the Debtors, which had caused the firm to take action on the Debtors' behalf in an attempt to prevent dismissal of their case. He was asked if he had brought his telephone logs with him to the hearing, since the Debtors had testified that they had repeatedly contacted the firm, to no avail. However, the attorney conceded that he did not have the logs with him. In a review of the file, he testified that he could locate no letters ever sent by the firm to the Debtors.

The attorney testified that the Debtors had previously filed bankruptcy petitions in 2001 and 2002 and that they had net pay of $5,606.82 per month, with expenses of $5,492. It appeared that the Debtors owed approximately $30,251 on the Citifinancial vehicle, but the vehicle only had a value of $30,000. As to the Toyota vehicle, it was worth approximately $12,000, but the Debtors owed the creditor the amount of $6,000. The creditor on the Debtors' residence had filed a proof of claim stating that it was owed $561,712.07, of which $34,813.59 was in arrears. However, the Debtors had only provided for the payment of $16,621 as arrearages in their Plan, which had caused the Trustee to conclude that the Debtors' Plan was severely underfunded. The Trustee had not even considered the Debtors' failure to pay real estate taxes as a part of his analysis. Given the Debtors' potential disposable income, but the overwhelming debt that they had to repay, the Trustee questioned the feasibility of the Debtors' Plan.

### III. DISCUSSION

Based upon the letters received from the Debtors, the Court has framed the issue

5

Case 2:07-bk-06303-SSC    Doc 61    Filed 10/29/08    Entered 10/29/08 10:08:02    Desc
Main Document    Page 5 of 8

as to whether counsel for the Debtors should be required to disgorge all, or a part, of the fees and costs received, or to be received, from the Debtors pursuant to Section 329 of the Bankruptcy Code.[12] In this case, counsel for the Debtors filed a Disclosure of Compensation of Attorney for the Debtors with the Court, on December 11, 2007, reflecting that the Debtors had agreed to pay the firm $1,200 at the time of filing of the Debtors' petition, with the sum of $2,300 listed as the balance owing.[13] At the time of the filing of the Debtors' Chapter 13 Plan, counsel for the Debtors included a Fee Application that described the services rendered, or to be rendered, by the firm, and requested the allowance and payment of the balance owed to the firm in the amount of $2,300. Thus, counsel is requesting compensation for services rendered in this dismissed case in the aggregate amount of $3,500.

The Court has carefully evaluated the testimony of the witnesses and considered the evidence presented. The Debtors' outrage at the behavior of, and the representation by, their counsel was palpable. As they stated to the Court, over and over, they lost everything. It is

---

**12.** 11 U.S.C. § 329 (West 2008) provides:

**(a)** Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

**(b)** If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--

>   **(1)** the estate, if the property transferred--
>>   **(A)** would have been property of the estate; or
>>   **(B)** was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
>   **(2)** the entity that made such payment.

**13.** See Docket Entry No. 11.

6

difficult for this Court to imagine why a Chapter 13 petition was ever recommended to these Debtors. Given their lack of disposable income, and the overwhelming debt that they were trying to repay, there was no realistic ability for these Debtors to repay their creditors in a Chapter 13 Plan. As noted by the Trustee, any plan to be presented by them would necessarily be severely underfunded. If the Debtors had no possibility of success in a Chapter 13, they should have been told that. There is nothing in the record to reflect that such a discussion ever occurred with them. Instead the Debtors were charged $3,500 for legal services concerning the preparation, filing, and confirmation of a Chapter 13 plan. The Court also concludes that counsel should have communicated with the Debtors more frequently and directly as the case quickly encountered problems. The fact that the attorney's file did not contain one letter sent to the Debtors reflects the severity of the communication problem. In reviewing the Debtors' financial situation, the Court concludes that if they were to file a bankruptcy petition, it should have been a Chapter 7. The Debtors may have elected not to proceed in such a manner, because it would have led, most certainly, to the loss of their home and at least one of their vehicles. But at least the Debtors could have made an informed decision, and perhaps saved some money.

   The Debtors appear to be requesting the return of $2,300, rather than have those funds transferred to their counsel for the balance of the fees due and owing to the firm. This would allow the firm to retain the sum of $1,200 for the preparation of the schedules, attending the Section 341 Meeting of Creditors, and other services rendered to the Debtors, such as the filing of the Motion to Extend. Although the Court previously executed the Order granting counsel's Fee Application, the Court may always question, and set aside, its own orders. In re Lenox, 902 F.2d 737 (9th Cir. 1990). Moreover, Section 329 also provides the Court with the opportunity to examine the fee agreement that a debtor may enter into with his or her counsel and cause all, or a portion, of that fee to be disgorged. In this case, whether the Court is reexamining the Order granting the Fee Application of counsel, or it is reviewing the overall compensation of $3,500 to be paid to Debtor's counsel, the Court concludes that counsel has not provided services

Case 2:07-bk-06303-SSC    Doc 61    Filed 10/29/08    Entered 10/29/08 10:08:02    Desc
Main Document    Page 7 of 8

1 to the Debtors with a value of $3,500, and that the sum of $3,500 is excessive as compensation to
2 the firm in this case.

## IV. CONCLUSION

Based upon the foregoing, the Trustee shall recompute the distributions to be turned over to creditors and the Debtors in this dismissed case. The Arizona Department of Revenue must be paid the full amount of its levy, or the sum of $826.50, before any funds may be returned to the Debtors. However, the Court concludes that counsel for the Debtors shall receive no further compensation in this matter. The sum of $1,200 initially paid by the Debtors to counsel, at the commencement of this case, shall be the sole compensation that the firm shall receive in this matter. The Court shall execute a separate order incorporating this decision.

DATED this 29th day of October, 2008.

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

8